**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| FRANCISCO A. RODRIGUEZ-LUNA, | |
| **Plaintiff,** | |
| v. | CIVIL NO.  20-1182 (PAD) |
| FINANCE OF AMERICA REVERSE, **ET AL.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff, Francisco A. Rodríguez-Luna, sued Finance of America Mortgage, LLC, Compu-Link Corporation, and the U.S. Department of Housing and Urban Development ("HUD"), complaining of lack of assistance to manage what he describes as an unexpected post-closing property tax balance in the servicing of a reverse mortgage.  Basically, he takes aim at the mortgage servicer for not giving him funds to satisfy those post-closing property taxes; for lacking physical presence in Puerto Rico so that he could meet with a servicer representative face to face; and for not having a Spanish-speaking representative available to speak with him. over the phone.[1]  He claims that the lack of assistance violates "most federal regulations in the real estate industry" (Docket No. 7, p. 2),[2] and

---

[1] Still, plaintiff sued not only the mortgage servicer, but two other entities as well.

[2] To that effect, the "Jurisdiction and Venue" Section of the amended complaint reads:

This Honorable Court has jurisdiction over the parties and the subject matter of this litigation pursuant to our claims on violations to the National Housing Act 24 C.F.R.§203.604, Truth in Lending Act (TILA) 15 U.S.C. § 1640[a][1],[2], and The Real Estate Settlement Procedures Act of 1974 (RESPA) (12 U.S.C. 2601 et seq.), the Fair Housing Act 42 U.S.C. 3601 et seq. and the Homeowners Refinancing Act, also known as Home Owners Act of 1933.  Other applicable violations might entail the Constitution of the United States of America, Fifth and Fourteenth Amendment Due Process Rights, Home Mortgage Disclosure Act, Regulation C of such (HMDA), Home Ownership And Equity

requests protection against a "possible foreclosure action," damages in the amount of $1 Million, and costs, expenses, and attorney's fees. Id. at p. 9, ¶¶ A, C, E.

Before the court are (i) the Finance of America Reverse LLC's "Motion to Dismiss the Amended Complaint for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(B)(6)" (Docket No. 19); (ii) "Defendant Compu-Link Corporation d/b/a Celink's Motion to Dismiss" (Docket No. 22); and (iii) the "United States' Motion to Dismiss" (Docket No. 36).[3]  Plaintiff opposed all motions (Docket Nos. 23, 31, and 41, respectively).  Finance of America Reverse LLC replied (Docket No. 26).  A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the allegations, that is, whether the complaint raises a plausible entitlement to relief.  See, Rodríguez-Vives v. Puerto Rico Firefighters Corps., 743 F.3d 278, 283 (1st Cir. 2014)(examining standard).  Dismissal is appropriate if plaintiff's well-pleaded facts do not reveal plaintiff is entitled to relief.  See, García-Catalán v. United States, 734 F.3d 100, 102-103 (1st Cir. 2013)(to avoid dismissal, alleged facts

Protection Act (HOEPA), Equal Credit Opportunity Act, Regulation B of such (ECOA), Fair And Accurate Credit Transactions (FACT), Home Owners Protection Act (HOPA), Gramm Leach-Bliley Act (GLBA), Fair Credit Reporting Act, Regulation V of such, and the Fair Debt Collection Practices Act (FDCPA), Consumer Financial Protection Bureau (CFPB), Qualified Written Requests (QWR's), Secure And Fair Enforcement For Mortgage Licensing Act ("SAFE ACT"), DODD-FRANK Financial Reform Act (THE "DODD-FRANK ACT"), HARP, HAMP and any and all related consumer and mortgage laws (Docket No. 7, p. 2).  Also, the amended complaint includes a claim under Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141. Id. at p. 3.

[3] The United States joined the motions to dismiss filed by both Finance and Celink, stating that the arguments raised in those motions likewise apply to the government (Docket No. 36, p. 2).  As an alternate ground in support of dismissal, it claimed that (i) there is no factual or legal basis that would grant jurisdiction over the United States, as there is no allegation that HUD had any involvement in the predicate acts of which plaintiff complains (id.), and (ii) if this is a tort action, the United States and not HUD is the proper defendant and, additionally, plaintiff failed to exhaust administrative remedies under the Federal Tort Claims Act (id. at pp. 2-4).  In response, plaintiff asserts that although HUD's involvement is "minor" (Docket No. 41, p. 3), it is "a party on oversight and approval of the HECM mortgage agreement and required documentation." Id.  He states that HUD holds essential information on the documents HUD-1 forms, has control over their representative's performance, establishes policy about the LED population of Spanish speakers, and most importantly, has the capacity to dissolve a mortgage agreement non-complaint with federal law and their policy. Id. at p. 2.  As such, in his view, HUD should remain in this case; and if not, he indicates that its absence should not affect his demands against co-defendants. Id.

must show that claim is plausible).  Drawing all reasonable inferences in plaintiff's favor, dismissal

is appropriate here.

## I.    BACKGROUND[4]

### A.   The Home Equity Conversion Mortgage Loan ("HECM")

Plaintiff is a 70-year-old owner of a property located in San Juan, Puerto Rico (Docket No. 7,

¶ 1).  On March 28, 2012, when he was 63 years of age, he obtained a HECM – a reverse mortgage

– with Senior Mortgage Bankers. Id. at ¶ 7.[5]  For that purpose, plaintiff and his wife executed a home

equity conversion mortgage deed (Deed Number 29) before a Notary Public, and the lender approved

a principal limit amount of $199,375.00. Id. at ¶ 8.  On or about April 2, 2012, after closing, plaintiff

received $169,261.60. Id.[6]  As part of the closing costs and payments, a check for $6,704.03 would

---

[4] Unless otherwise indicated, this Section is based on the well-pleaded facts in the amended complaint, as supplemented by the documents attached thereto or relied upon in those pleadings, and key documents attached to defendants' motions, the authenticity of which is not in dispute.  See, Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st. Cir. 2001) (court may properly consider documents attached to the complaint in its review of a motion to dismiss); Nieto-Vicenty v. Valledor, 984 F.Supp.2d 17, 20 (D.P.R. 2013)(court may consider implications from documents attached to or fairly incorporated into the complaint).

[5] The mortgage insurance and servicing were transferred on April 2 of that year to Urban Financial Group, Inc. who, in turn, transferred them to Compu-Link d/b/a Celink "somewhere in the future." (Docket No. 7 at ¶ 7).  As of the complaint's filing, Finance of America was the "owner" of plaintiff's mortgage loan (id. at ¶ 2); Celink the servicing company (id. at ¶ 3); and HUD, an entity with a "solidary obligation in this mortgage." Id. at ¶ 4. It is unclear what plaintiff means by HUD's obligation in this context.

[6] Plaintiff takes issue with what he described as a "strange Allonge" that was allegedly added out of the HUD-1 disclosure form and that stated the note value was in the amount of $478,500.00 (Docket No. 7 at ¶ 10).  Although he signed the allonge, he claims it was inadvertently and unknowingly made to sign a note with a value "far higher than the original HECM mortgage loan agreement."  Id.  He asserts that this somehow violates "TILA and RESPA" (id. at ¶ 10), but never explains – in the complaint or in opposing the motions to dismiss – how either TILA or RESPA are violated.  In these circumstances, the complaint does not even include the bare minimum to support a violation under these acts or raise a right to relief beyond a speculative level.  Thus, these claims lack merit and will be dismissed. What is more,  it is clear from the Mortgage Loan documents – which plaintiff signed – the HECM guaranteed not only the lump sum disbursed to plaintiff, but also the "repayment of the debt evinced by the note, including all future advances, with interests, and all renewals extensions and modification of the Note, up to a maximum amount of **FOUR HUNDRED SEVENTY-EIGHT THOUSAND, FIVE HUNDRED DOLLARS and ZERO CENTS** ($478,500.00) with a fixed interest rate [of 5.060%]" (Docket No. 19-1, p. 4, Section Second).  So, plaintiff's alleged surprise or description of the "strange allonge" is belied by the loan documents which are consistent with the maximum value stated in the note.

be sent to the Puerto Rico's Center for Municipal Internal Revenue ("CRIM") as a "payoff

balance." Id. at ¶ 12.[7]  Notably, under the terms of the mortgage, plaintiff was required to pay property

taxes and home insurance, and failure to do so would be grounds for acceleration of the debt.  See,

Docket No. 19-1, Fifth Clause, paragraph 9 (Payment of Property Taxes) and 9(b)(iii).

## B. Property Taxes

In 2012, after the closing, CRIM "decided to retroactively collect from plaintiff accumulated

taxes from 2009 on forth to date, for a total of: $28,873.33." (Docket No. 7 at ¶ 13).[8]  Although  it

was plaintiff's understanding that the closing costs should have "cover[ed] this unexpected property

taxes balance" (id. at ¶ 14), he used part of the money obtained through the HECM to pay the

retroactive property taxes, but "since the lump sum money was for his retirement [] and paying off

other debts, he fell behind [on his payments] when the year 2016 arrived." Id.[9]

Sometime in 2016, Celink sent to plaintiff a letter regarding an outstanding property tax

balance. Id. at ¶ 15.  According to the amended complaint, the letter states that "if we [Celink] do not

hear from you within 30 days from the date of this letter, we may be required to advance the funds to

---

[7] The Municipal Revenue Collection Center (known by its Spanish acronym, CRIM) collects, receives, and allocates
public funds generated primarily through municipal property taxes.  See, P.R. Laws Ann. tit. 21 § 5802.

[8] Plaintiff alleges it is unclear if the $6,704.03 check was ever sent to CRIM (Docket No. 7 at ¶ 13).

[9] It is unclear when plaintiff paid the $28,873.33.  What is clear from his allegations, is that he learned of the
"retroactive" debt for "accumulated taxes" in 2012 (Docket No. 7 at ¶ 12); after the HECM was signed (id.); and he
started sending letters to Celink in Spanish to request Celink to pay taxes starting in August of 2018 (that is, more
than six years after closing of the HEMC). Id. at ¶¶ 19-20.  And, even though the letter attached to the amended
complaint as Exhibit 1 states that "[f]or your convenience, the base outstanding tax information is listed on the last
page of this letter" (Docket No. 7-1), that last page was not included by plaintiff as part of the exhibit.  In any event,
it seems that plaintiff was requesting Celink's assistance to pay *annual post-closing* taxes not related to the $28,873.33
that he paid in 2012.  But, as discussed below, this clarification is immaterial considering that it was plaintiff's sole
responsibility to pay those taxes.

pay the outstanding tax bill and charge the cost to your loan balance." Id.[10] and Docket No. 7-1, Copy of Celink letter dated June 28, 2019, attached to the amended complaint as Exh. 1.  Further, the letter warned that **"[t]his action could result in your loan being placed into default and being called due and payable. If your loan is approved to be called due and payable, it could lead to foreclosure of your home, which we want to help you avoid**" (Docket No. 7-1)(emphasis in original).

Plaintiff alleges that he attempted to reach Celink by phone to request advancement of funds, but the calls were transferred to other departments, and he was not able to speak with anyone who could "serve him with information, guidance and specific instructions as to how to proceed.  The only ongoing communication from Celink was their [sic] *pro-forma* automatic letter response" (Docket No. 7 at ¶ 16).  So, plaintiff decided to "answer Celink by [sic] letters in Spanish to their [sic] postal address with the same request in each and every one of them: 'to please use his available funds and pay in advance any property taxes, so he can repay Celink, and have time to refinance with another financial entity the remaining debt.'"  Id. at ¶ 19.  To this effect, he sent to Celink several certified letters referred to in paragraph 20 of the amended complaint with the same request.[11]  In response, he kept receiving "pro-forma invoice letters" from Celink that "led [him] to believe he had funds available, and he had to activate them with Celink's representatives."  Id. at ¶ 21.  This action followed.

---

[10] The court included the language that appears on the letter because plaintiff included an inaccurate quotation of the letter in paragraph 15 of the amended complaint.

[11] Copies of those letters were not included as attachments to the amended complaint or otherwise made available on the record.

## II.   DISCUSSION

### A.  Reverse Mortgages

A reverse mortgage is "a form of equity release in which a mortgage lender (typically a bank) makes payment to a borrower based on the borrower's accumulated equity in his or her home." Bennett v. Donovan, 703 F.3d 582, 584 (D.C.Cir. 2013).  Unlike a traditional mortgage, in which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding balance until certain triggering events occur, like the death of the borrow or the sale of the home.  Id. at 584-585.  Likewise, repayment may be triggered when the mortgagor fails to comply with an obligation and the Secretary of Housing and Urban Development approves of requiring immediate payment in full.  See, 24 C.F.R. 206.27(c)(2)(iii) and Docket No. 19-1, Fifth Clause at paragraphs 9(b) and (d) of the mortgage.  According to HUD, these mortgages are increasing in popularity with seniors who have equity in their homes and want to supplement their income. www.hud.org/program_offices/housing/sfh/hecm/hecmhome (last visited on August 9, 2021).

The only reverse mortgage insured by the U.S. Government is called a HECM and is available through an FHA-approved lender.  Id.  The HECM enables the borrower to withdraw a portion of the home's equity.  The amount that will be available for withdrawal varies by borrower and depends on several factors.  See, 12 U.S.C. § 1715z-20 (governing HUD's insurance of HECM for elderly homeowners);  § 1715z-20  (b)(3)(defining a HECM);  § 1715z-20(d)(listing the eligibility requirements);  24  C.F.R.  §  206  (regulations  governing  the  HECM)  and www.hud.org/program_offices/housing/sfh/hecm/hecmhome (last visited on August 9, 2021).  With this backdrop, the court focuses on plaintiff's claims.

Rodríguez-Luna v. Finance of America Mortgage LLC *et al.*
Civil No. 20-1182 (PAD)
Memorandum and Order
Page 7

### B.  Claims[12]

First, plaintiff alleges that Celink improperly failed to comply with his request to advance funds to satisfy outstanding post-closing property taxes.[13] See, Docket No. 7 at ¶¶ 16 and 19 (describing plaintiff's attempts to so request).  He does not indicate, and the court has not found, the legal source of the obligation plaintiff bases this claim on.  To the contrary, b ased on the agreement that plaintiff signed, the obligation to pay property taxes rests solely on him. See, Fifth Clause, paragraph 9 (Payment of Property Taxes)(stating that "[b]orrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement").  Nothing in this language can be interpreted as a shift in plaintiff's obligation to pay the property taxes at issue.  And, while both the Loan Agreement and the Celink letter informed plaintiff that Celink had the *option* – but not the obligation – to advance funds to pay for outstanding property taxes, this in no way can be interpreted as imposing a legal obligation or a duty upon Celink to do so.

Second, plaintiff asserts that considering that Puerto Rico is offshore (outside the Continental United States) and has a "dual language" (mainly Spanish) defendants violated the Fair Housing Act,

---

[12] Plaintiff named Finance of America Reverse and HUD as defendants but did not include clear allegations of their involvement in the facts giving rise to the claims here.  Even if the court could decipher their involvement, the pleadings contain no factual allegations to support plaintiff's thesis that these defendants violated the rights that he invokes as basis for the action.  And supposing the allegations are directed not only as to Celink but also as to Finance America Reverse and HUD, those claims fail for the same reason they fail as to Celink.  Thus, in discussing plaintiff's claims, the court assumes they are addressed against all defendants.

[13] As plaintiff himself admits, he received a lump sum payment of the loan amount (Docket No. 7 at ¶ 8). There were no monthly payments from which the property tax payment could be withheld, nor plaintiff directs the court's attention to the existence of a line of credit made available to him for that purpose.  What is clear is that since the execution of the HECM, plaintiff knew that he had the obligation to pay all property taxes.

42 U.S.C. § 3601, et seq. by not providing a Spanish-speaking representative readily available to discuss with borrowers (Docket No. 7 at ¶ 25).  That obligation does not exist.  The statute provides in part that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."  See, 42 U.S.C. § 3605.[14]

Nowhere in plaintiff's filings is there reference to a source imposing upon the servicer the obligation to retain a Spanish speaker to interact with a borrower in the circumstances plaintiff has described in which the servicer does not have the obligation to advance payments to cover plaintiff's taxes.[15]  Plaintiff does not allege that anybody in Celink refused to take his calls because they originated in Puerto Rico or were from a person born in Puerto Rico.  His grievance is that no one reached him effectively when his calls were transferred from one department to another (Docket No. 7 at ¶ 16).  If what plaintiff states is true – and the court so assumes for purposes of this motion – it may have been a best business practice for Celink to have a Spanish speaker on board for these purposes, but not having it is not illegal under the Fair Housing Act.

Third, plaintiff contends that defendants violated the National Housing Act, 24 C.F.R. § 203.604 by not having a representative within a 200-mile radius, that plaintiff could reach for a face-to-face meeting (Docket No. 7 at ¶ 17).  Section 203.604 states that: "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting,

---

[14]  As explained above, plaintiff did not qualify for Celink to advance payments to cover the costs of his outstanding property taxes.  Where Celink had no obligation to advance the payments, its failure to do so cannot be discriminatory under the Fair Housing Act.

[15]  Plaintiff cites Texas Department of Housing and Community Affairs v. The Inclusive Community Project, 576 U.S. 519 (2015)(Docket No. 31 at p. 9).  That case is inapposite, as it deals with a Federal Government program to provide low-income housing tax credits that are distributed to developers through designated state agencies.  Id. at 525.

before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b). A "reasonable effort" requires, at minimum, "one letter sent to the mortgagor certified by the Postal Service as having been dispatched" and "one trip to use the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee...." 24 C.F.R. § 203.604(d). Thus Section 203.604(d) itself exempts a servicer – like Celink – from the requirement of conducting a face-to-face meeting if, as here, the "mortgage property is not within 200 miles of the mortgagee."

Fourth, plaintiff contends that defendants violated their duty to "mitigate under 24 C.F.R. § 203.605 Loss mitigation performance" (Docket No. 7 at ¶¶ 17, 18).[16] Section 203.605 imposes a duty to mitigate "before four full monthly installments due on the mortgage have become unpaid." Id. Subsection (a). In those circumstances, the mortgagee shall evaluate on a monthly basis all the loss mitigation techniques provided in Section 203.501 to determine which is appropriate and take the suitable loss mitigation action. Here, per plaintiff's own allegations, the mortgage in question required "no monthly mortgage payments" (Docket No. 7, p. 4). Thus, the allegations do not support plaintiff's theory.

---

[16] Plaintiff refers to a "magnified" problem in Puerto Rico, and an "alarming statement published by the USA Today," in the sense that Puertorricans face unique challenges "ranging from spotty mail service to the lack of some loan materials in Spanish." See, Docket No. 23 at p. 5. Plaintiff does not explain how those news clippings provide a legal basis for the claims asserted here.

Rodríguez-Luna v. Finance of America Mortgage LLC *et al.*
Civil No. 20-1182 (PAD)
Memorandum and Order
Page 10

### III.    CONCLUSION

For the reasons stated, the requests to dismiss the amended complaint at Docket Nos. 19,

22 and 36 are GRANTED and the case DISMISSED.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of August, 2021.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge